**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
MONSANTO COMPANY,              )
                               )
        Plaintiff,             )
                               )
    v.                         )    1:10CV898
                               )
ARE-108 ALEXANDER ROAD, LLC,   )
                               )
        Defendant.             )
```

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This action comes before the undersigned United States Magistrate Judge for a recommended ruling on Plaintiff's Motion for Summary Judgment (Docket Entry 20). (See Docket Entry dated June 24, 2011; see also Docket Entry dated Nov. 19, 2010 (referring case to this Court's Amended Standing Order 30).) For the reasons that follow, the instant Motion should be granted.

BACKGROUND

This action arises out of a dispute regarding the rent payable under a lease of property in Durham County, North Carolina. (See Docket Entry 1.) Defendant, as landlord, entered into the Phase 1B Lease Agreement ("Lease") with tenant Paradigm Genetics, Inc. ("Paradigm") on April 3, 2000. (See Docket Entry 47-1 at 2.)[1] The term of the Lease extended from November 1, 2000, through October 31, 2010 ("Term") and provided for a base rent "equal to $315,000, payable in equal monthly installments equal to $26,250.00" ("Base

---

[1] At the time it originally entered into the Lease, Defendant operated as ARE-104 Alexander Road, LLC. (See Docket Entry 47-1 at 2.)

Rent"). (See id. at 3.) Section 41 of the Lease gave Paradigm two consecutive rights to extend the Term of the Lease for five years each (each, a "Term Extension") (see id. at 37) and provided that, "[d]uring any Term Extension, no Base Rent . . . shall be payable" (id.). Paradigm assigned the Lease to Plaintiff on March 23, 2005. (See Docket Entry 47-2 at 2.)[2] In light of that assignment, Plaintiff and Defendant entered into an amendment to the Lease on May 9, 2005 ("First Amendment"). (See id.) The First Amendment makes clear that Plaintiff retained the rights to the Term Extensions as provided by Section 41 of the Lease. (See id. at 7.)

On November 14, 2007, with the stated purpose of "provid[ing] for additional options to extend the Term and amend the parking provisions of the Lease," Plaintiff and Defendant entered into a second amendment to the Lease ("Second Amendment"). (Docket Entry 47-3 at 2.) The Second Amendment provides that, "[f]ollowing the exercise by [Plaintiff] of the existing 5-year extension options under Section 41 of the Lease," Plaintiff "shall have 2 consecutive rights (each, an 'Additional Extension Right') to extend the Term of this Lease [(each, an 'Additional Extension Term')] . . . ." (Id.) The Second Amendment further provides that, "[u]pon commencement of any Additional Extension Term, Base Rent shall be payable at the Market Rate" and that "'Market Rate' shall mean the then market rental rate as determined by [Defendant] and agreed to

---

[2] Paradigm Genetics, Inc. had changed its name to Icoria, Inc. by the time of that assignment to Plaintiff. (See Docket Entry 1, ¶ 8.)

by [Plaintiff], which shall in no event be less than the Base Rent payable as of the date immediately preceding the commencement of such Additional Extension Term increased by 103% multiplied by such Base Rent." (Id.)

In October 2009, Plaintiff gave Defendant notice that it was exercising its right to the first Term Extension under Section 41 of the Lease. (Docket Entry 21 at 7.) That Term Extension was to commence on November 1, 2010. (See Docket Entry 47-1 at 3, 37.) On April 9, 2010, Defendant sent a letter to Plaintiff informing Plaintiff that it would have to pay more than $38,000 per month in Base Rent beginning on November 1, 2010, and more than $2.4 million over the first five-year Term Extension. (See Docket Entry 1-1.) On April 28, 2010, Plaintiff responded with its understanding that it did not have to pay Base Rent during the Term Extension under the Lease. (See Docket Entry 1-2.) Defendant then sent a letter to Plaintiff asserting that the Second Amendment reflected an agreement by the Parties to modify the Lease such that Base Rent would be required during the Term Extensions. (See Docket Entry 1-3.) On November 1, 2010, Plaintiff paid all amounts due under the Lease with the exception of Base Rent. (See Docket Entry 1, ¶ 28.) On November 15, 2010, counsel for Defendant sent a Notice of Default demanding payment of the Base Rent, a late fee, and interest under the Lease for November 2010 and threatening to commence legal proceedings. (See Docket Entry 1-4.) Plaintiff paid the Base Rent under protest. (See Docket Entry 1-5.) The instant action followed.

-3-

Plaintiff seeks:

(1) "A judgment declaring that (a) [Plaintiff] has no obligation to pay Base Rent during the two Term Extensions under the [Lease]; (b) [Plaintiff] is not in default under [its leases with Defendant] for not paying such Base Rent; (c) [Defendant] is not entitled to take any adverse action against [Plaintiff] for not paying such Base Rent; and (d) [Plaintiff] is entitled to return of all Base Rent, late fees, and interest paid under protest to [Defendant]" (Docket Entry 1 at 12);

(2) "A judgment for monetary damages in an amount to be determined at trial, which amount shall include all amounts of Base Rent and related charges paid under protest by [Plaintiff] to [Defendant] in connection with the [] Lease, plus prejudgment interest on the amount of the judgment" (id.);

(3) "An award of its attorneys' fees and costs pursuant to Section 44(k) of the [] Lease and as otherwise permitted by law" (id.); and

(4) "Such other and further relief as the Court may deem just and proper" (id.).

Before the Parties engaged in discovery, Plaintiff filed the instant Motion for Summary Judgment, contending that, "because the provisions [of the Lease] are unambiguous and the [L]ease is fully integrated, no discovery is needed to determine the intent of the [P]arties, nor should it be allowed." (Docket Entry 21 at 1.) Defendant responded in opposition that "documents produced by [Plaintiff] and the depositions of [Plaintiff] witnesses (and any

-4-

identified third parties) are relevant to this matter and would be used to properly and full [sic] oppose [Plaintiff's] [M]otion for [S]ummary [J]udgment." (Docket Entry 31 at 9.) Moreover, Defendant contended that the contractual terms are unclear and/or ambiguous, such that discovery "should be permitted as regarding the proper interpretation and intent of the interrelated [L]ease provisions (and [L]ease amendments) in dispute between the [P]arties." (Id.) The undersigned stayed discovery "pending a determination by the Court of the threshold issue . . . of whether an unambiguous contract exists such that the Court can resolve the instant action without resort to materials outside the four corners of the contract . . . ." (Minute Order dated July 14, 2011.)

## LEGAL STANDARD

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering that question, the Court "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, "unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006).

To the extent the Court must draw conclusions about matters of North Carolina contract law in evaluating Plaintiff's Motion for

Summary Judgment,[3] "the highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted." West v. American Tel. & Tel. Co., 311 U.S. 223, 236 (1940). However, "[a] state is not without law save as its highest court has declared it. There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them." Id. Accordingly, "it is the duty of [a federal court facing a question of state law] to ascertain from all the available data what the state law is and apply it . . . ." Id. at 237. "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Id.

As it relates to the instant matter:

---

[3] The Parties appear in agreement that, where the Court must apply state law, North Carolina law governs. (See Docket Entry 21 at 10-11; Docket Entry 31 at 9-12.) Moreover, the Lease provides that "[c]onstruction and interpretation of this Lease shall be governed by and construed and enforced in accordance with the internal laws of the state in which the Premises are located, without regard to choice of law principles of such state." (Docket Entry 47-1 at 41.)

-6-

> "[i]t is the general law of contracts that the purport of a written instrument is to be gathered from its four corners, and the four corners are to be ascertained from the language used in the instrument. When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court and the court cannot look beyond the terms of the contract to determine the intentions of the parties. However, extrinsic evidence may be consulted when the plain language of the contract is ambiguous. Whether or not the language of a contract is ambiguous is a question for the court to determine. In making this determination, words are to be given their usual and ordinary meaning and all the terms of the agreement are to be reconciled if possible."

Stovall v. Stovall, 205 N.C. App. 405, 410, 698 S.E.2d 680, 684 (2010) (quoting Lynn v. Lynn, ___ N.C. App. ___, ___, 689 S.E.2d 198, 204-05 (2010)).

In this context, "[a]n ambiguity exists in a contract when either the meaning of words or the effects of provisions is uncertain or capable of several reasonable interpretations . . . [or] where the language of a contract is fairly and reasonably susceptible to either of the constructions asserted by the parties." Myers v. Myers, ___ N.C. App. ___, ___, 714 S.E.2d 194, 198 (2011) (internal quotation marks omitted). In addition, "'[a] latent ambiguity may arise where the words of a written agreement are plain, but by reason of extraneous facts the definite and certain application of those words is found impracticable.'" Id. (quoting Miller v. Green, 183 N.C. 652, 112 S.E. 417, 418 (1922)). In other words, "[e]ven though words in a lease seem clear and unambiguous, a latent ambiguity exists if their meaning is less than certain when viewed in the context of all the surrounding

-7-

circumstances." Alchemy Commc'ns Corp. v. Preston Dev. Co., 148 N.C. App. 219, 224, 558 S.E.2d 231, 234 (2002).

DISCUSSION

On the instant facts, the language of the Lease, as read in conjunction with the First and Second Amendments, is clear and unambiguous. Section 41 of the original Lease provides for the right of the Term Extensions without payment of Base Rent. (See Docket Entry 47-1 at 37.) The First Amendment confirms that Plaintiff retained that right after assignment from Paradigm. (See Docket Entry 47-2 at 7.) The Second Amendment addresses only the payment of Base Rent during the subsequent Additional Extension Terms. (See Docket Entry 47-3 at 2.) Simply put, no language in the Second Amendment reflects modification of the terms of Section 41 of the Lease.

Defendants urge the Court to find the Lease ambiguous based in part on the language of Section 1(a) of the Second Amendment (see Docket Entry 31 at 13), which provides:

> [Plaintiff] shall have 2 consecutive rights (each an 'Additional Extension Right') to extend the Term of this Lease, consisting of 1 right to extend the Term of this Lease for a period of 10 years, and 1 final right to thereafter further extend the Term of this Lease for a period that expires on November 30, 2024 . . . on the same terms and conditions as this Lease (<u>other than Base Rent</u>) by giving [Defendant] written notice of its election to exercise each Additional Extension Right at least 9-months prior, and no earlier than 12 months prior, to the expiration of, as applicable, the last 5-year Extension Term provided for in Section 41 of the Lease, or the prior Additional Extension Term.

(Docket Entry 47-3 at 2 (emphasis added).) In Defendant's view, "[b]y the specific reference to the existence of Base Rent at the

-8-

time of the potential exercise of the Additional Extension Right in 2020, the Second Amendment clarifies that Base Rent is being paid by [Plaintiff] to [Defendant] immediately prior to the exercise of any Additional Extension Right." (Docket Entry 31 at 13.) The language, however, does not support Defendant's position as it merely indicates that the Base Rent payable during the Additional Extension Terms will differ from that payable during the original Lease without addressing the Base Rent payable during the Term Extensions.[4]

Defendant also argues that the Lease is ambiguous because the Base Rent for the Additional Extension Terms adopts a floor based on "the Base Rent payable as of the date immediately preceding the commencement of such Additional Extension Term" (Docket Entry 47-3 at 2), such that the Second Amendment contemplates the payment of Base Rent during the Term Extensions. (See Docket Entry 31 at 14.) The fact that Defendants may have negotiated an ineffectual floor regarding any Additional Extension Right does not create an ambiguity in the face of otherwise clear provisions establishing that Plaintiff had no obligation to pay Base Rent during earlier Term Extensions. The Parties "should be entitled to contract on their own terms without the indulgence of paternalism by the courts in the alleviation of one side or another from the effects of a bad

---

[4] Plaintiff "acknowledges that it is obligated to pay Base Rent during the Additional Extension Terms (after the initial Term Extensions) under [the Lease]." (Docket Entry 21 at 6.)

bargain." Blaylock Grading Co. v. Smith, 189 N.C. App. 508, 511, 658 S.E.2d 680, 682 (2008) (quotation marks omitted).

Finally, Defendant points to the provisions of the Second Amendment which state that, "[i]n the event of any conflict between the provisions of this Second Amendment and the provisions of the Lease, the provisions of this Second Amendment shall prevail. Whether or not specifically amended by this Second Amendment, all of the terms and provisions of the Lease are hereby amended to the extent necessary to give effect to the purpose and intent of this Second Amendment." (Docket Entry 47-3 at 6.) However, as noted, the language at issue does not present a conflict between the Lease and the Second Amendment, nor should the Court alter the Lease's language based on Defendant's supposed "purpose and intent" which Defendant failed to reflect in the bargained-for contractual language. Thus, the cited provisions of the Second Amendment do not support Defendant's position.

In essence, Defendant asks the Court to read into the Lease (and the Second Amendment) contractual provisions that the contractual language does not warrant. As Plaintiff notes (see Docket Entry 42 at 9-10), Defendant appears to highlight the deficiency of its own argument in its briefing with the following statement: "Most tellingly, there is absolutely no mention in the [P]arties' Second Amendment – or in any of the extensive, detailed negotiations leading up to the execution of the Second Amendment - that [Plaintiff] would not pay Base Rent to [Defendant] during the [Term Extensions] through 2020." (Docket Entry 31 at 17.) In

fact, the Second Amendment lacks any provision regarding the payment of Base Rent during the Term Extensions, whereas the Lease and First Amendment clearly address that subject. (See Docket Entry 47-3.) Accordingly, given the Lease's clear language that Base Rent is not payable during the Term Extensions (see Docket Entry 47-1 at 37), along with the First Amendment's confirmation of that arrangement (see Docket Entry 47-2 at 7), and the Second Amendment's lack of any language altering (or even addressing) the same, this Court should conclude that the Lease, as read in conjunction with the First and Second Amendments, establishes, on its face, that Plaintiff does not owe Defendant Base Rent during the Term Extensions.[5]

---

[5] Plaintiff's brief also contends that a finding in its favor would entitle it to attorney's fees under Section 44(k) of the Lease. (See Docket Entry 21 at 20; see also Docket Entry 47-1 at 41.) Section 44(k) provides that, "[i]f either [Plaintiff] or [Defendant] reasonably seeks legal services with respect to the proper interpretation . . . of this Lease, the party receiving substantially the result it sought or defended (the 'Prevailing Party') . . . shall be entitled to recover from the adverse party all reasonable fees and costs incurred by the Prevailing Party in connection with such legal services." (Docket Entry 47-1 at 41.) Defendant's Response does not contest the propriety of an award of attorney's fees to the Prevailing Party in this action. (See Docket Entry 31.) Morever, it would appear that the Lease would constitute "evidence of indebtedness" under N.C. Gen. Stat. § 6-21.2 such that attorney's fees would be authorized at least up to 15% of the outstanding balance on the Lease. See N.C. Gen. Stat. § 6-21.2(2); see also North Carolina Indus. Capital, LLC v. Clayton, 185 N.C. App. 356, 268 n.6, 649 S.E.2d 14, 23 n.6 (2007) ("Our appellate courts have held that a lease of real property is 'evidence of indebtedness' under section 6-21.2." (citing WRI/Raleigh, L.P. v. Shaikh, 183 N.C. App. 249, 644 S.E.2d 245 (2007)); Devereux Props., Inc. v. BBM & W, Inc., 114 N.C. App. 621, 626, 442 S.E.2d 555, 558 (1994) ("[I]f a lease refers to 'reasonable attorney's fees' and does not stipulate a specific percentage, section 6-21.2(2) applies and the amount of attorneys'
(continued...)

CONCLUSION

The Lease, First Amendment, and Second Amendment, when read together, reflect that Plaintiff has no obligation to pay Base Rent during the Term Extensions.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Docket Entry 20) be granted in that the Court should:

(1) enter judgment declaring that:

    (a)   Plaintiff has no obligation to pay Base Rent during the two Term Extensions under the Lease;

    (b)   Plaintiff is not in default for failing to pay such Base Rent;

    (c)   Defendant is not entitled to take any adverse action against Plaintiff for any failure to pay such Base Rent; and

---

[5](...continued)
fees is 15% of the outstanding balance."). With respect to Plaintiff's request for prejudgment interest (see Docket Entry 1 at 12), "[b]oth North Carolina courts and the Fourth Circuit, in an unpublished opinion, have recognized that an award of prejudgment interest is mandatory." Bridgetree, Inc. v. Red F Marketing LLC, No. 3:10-cv-00228-FDW-DSC, 2013 WL 443698, at *21 (W.D.N.C. Feb. 5, 2013) (unpublished) (citing Hamby v. Williams, 196 N.C. App. 733, 738, 676 S.E.2d 478, 481 (2009) and Castles Auto & Truck Serv., Inc. v. Exxon Corp., 16 F. App'x 163, 168 (4th Cir. 2001)); see also Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc., 994 F. Supp. 350, 389 (W.D.N.C. 1997) ("State law applies to questions involving prejudgment interest in diversity cases."); N.C. Gen. Stat. § 24-5(a) ("In an action for breach of contract, except an action on a penal bond, the amount awarded on the contract bears interest from the date of the breach.").

(d) Plaintiff is entitled to return of all Base Rent, late fees, and interest paid under protest to Defendant;

(2) enter judgment awarding monetary damages for all amounts of Base Rent and related charges paid under protest by Plaintiff to Defendant in connection with the Lease, plus prejudgment interest on the amount of that award; and

(3) enter judgment awarding Plaintiff its attorneys' fees and costs pursuant to Section 44(k) of the Lease as permitted by N.C. Gen. Stat. § 6-21.2(2).

                                        /s/ L. Patrick Auld
                                             **L. Patrick Auld**
                                  **United States Magistrate Judge**

March 25, 2013